J. PAUL HEWITT, Receiver, Appellee, v. HAWKEYE CASUALTY COMPANY et al., Defendants; A. H. POWERS et al., Appellants.

No. 40374.

NOVEMBER 11, 1930.

REHEARING DENIED APRIL 14, 1931.

Parrish, Cohen, Guthrie, Watters & Halloran, for appellee.

Warren H. White, for appellants.

ALBERT, J.—On the 21st day of November, 1921, the Interstate Automobile Insurance Company of Rock Rapids, Iowa, went into the hands of a receiver, and one E. H. Hoyt was appointed such receiver. He was later succeeded by J. Paul Hewitt. On June 10, 1924, the receiver recovered a judgment in the district court of Lyons County, Iowa, in a sum in excess of $400,000.00 against N. Hampe and H. F. Storjohann and others. Of these parties, Hampe and Storjohann are defendants in this action. After obtaining said judgment and on June 12, 1924, execution was issued thereon to the sheriff of Polk County, Iowa, and a levy made on certain stock of the said Hawkeye Casualty Company of which Storjohann owned 142.4 and Hampe 47.6 shares.

On July 12, 1924, Mrs. J. J. Maloney, defendant (one of the appellants herein) served a notice on the sheriff of Polk County to release said shares of stock from the levy, claiming that she was the owner thereof. On the demand of the sheriff, the receiver furnished an indemnity bond which was approved by the sheriff. On July 8, 1924, Mrs. Maloney brought two suits in the district court of Lyons County, Iowa, one in which Storjohann, the receiver, and the sheriff of Polk County were made defendants; and in the other, Hampe, the receiver, and the sheriff of Polk County were defendants, praying, among other things, that the sheriff be enjoined from selling the stock levied upon, alleging that the same had been previously pledged to

her, and asking that her rights be established in the said stock as against all of the defendants named therein, claiming her lien as such pledgee, and that the defendants be made to release said property from said levy and execution, and for general equitable relief.

This was the subject of her petition in both of said actions. Issue having been joined, these cases were tried, and on the 14th day of November, 1924, a judgment was entered in favor of Mrs. Maloney in each of said cases as prayed in her petition. Both of these cases were appealed to the Supreme Court where the Storjohann case was reversed in an opinion filed on the 28th day of September, 1928, and the Hampe case was reversed in an opinion filed October 23, 1928. *Procedendo* issued in both of these cases, and on April 3, 1929, the district court of Lyons County entered a decree in the Storjohann case in accordance with the opinion of the supreme court, and on April 15, 1929, a similar decree was entered in the Hampe case.

On February 16, 1929, the sheriff of Polk County sold these respective shares of stock and they were purchased by the plaintiff herein, a bill of sale therefor being issued by the sheriff to the plaintiff. Plaintiff then demanded of the Casualty Company that these 190 shares of stock be transferred upon its books to him which was refused; hence this action.

There are but two defendants in this case, to wit, Mrs. J. J. Maloney and A. H. Powers, who appeal. Under the record Mrs. Maloney claims no interest whatever in this stock, but was made defendant in the petition under claim that certain dividends had been paid to her. The question of these dividends passed out of the case before it was finally submitted, and the decree did not hold her liable for such dividends, so, as a matter of fact, she has no interest in this appeal.

The other appellant, A. H. Powers, is involved herein by reason of the following facts: The stock books of the Hawkeye Casualty Company show that certificate No. 451 (representing the shares of stock levied upon by the sheriff) was issued on December 7, 1923, to H. T. Hampe for 47.6 shares, and on March 26, 1928, the books show that this stock was transferred to one J. E. Montgomery by certificate No. 509. Certificate 452 (representing shares of stock levied upon by the sheriff) was issued December 7, 1923, to H. F. Storjohann for 142.4 shares, and

this certificate was transferred upon the books of the Company March 28, 1928, and a new certificate issued to J. E. Montgomery (No. 510) for 142.4 shares. The stock represented by these two certificates, Nos. 509 and 510, was transferred on the books of the corporation October 30, 1928, and to the appellant herein, A. H. Powers, was issued certificate No. 529 for 190 shares, and said shares now stand in the name of A. H. Powers who took these shares from Montgomery April 1, 1928, as collateral security for money then loaned to Montgomery, and later purchased the same from Montgomery.

On April 4, 1928, Powers duly notified the Hawkeye Casualty Company, through its secretary, that he held said stock as collateral security. He did not know of any of this litigation or of the receivership until about the middle of May, 1929, nor did he have any knowledge or information that the plaintiff herein claimed any lien, right, title or interest in or to the stock in controversy, and his claim is that he purchased this stock for value as a good faith purchaser, without any knowledge of the receivership or of any of the litigation which has been heretofore referred to. The district court held that Powers had no right, title or interest in or to said stock, and ordered the stock transferred upon the books of the Hawkeye Casualty Company to the plaintiff.

By comparison of dates it will be observed that Powers took this stock as collateral security and gave the statutory notice to the Company on April 4, 1928. This was before the two cases were reversed in this court as hereinbefore explained, but the transfer upon the books of the Company resulting later from his buying of the stock was not made until after the opinions had been filed in both of those cases in this court. Do these facts·constitute a defense in favor of Powers as against the claim of the plaintiff herein?

It is the contention of the appellant, Powers, that at the time he purchased this stock, there was no lien or incumbrance thereon, and having purchased the same for a valuable consideration, without knowledge or notice of any defects in the title thereto, he is now entitled to claim and own said 190 shares of stock, and plaintiff is not entitled to have the same transferred on the books of the corporation to the name of the plaintiff. He claims that the levy made by the sheriff ceased to have

any force or effect at the time the two judgments entered in the cases of Maloney versus Storjohann and Maloney versus Hampe for the reason, first, that an appeal was not taken within two days after the entry of said judgment; and second, because no supersedeas bond was filed by the respective appellants therein.

In Chapter 510, Code, 1927, dealing with "Attachment," we find the following provision:

"Section 12141. When an attachment has been discharged, if the plaintiff then announces his purpose to appeal from such order of discharge, he shall have two days in which to perfect his appeal, and during that time such discharge shall not operate to divest any lien or claim under the attachment, nor shall the property be returned, and the appeal, if so perfected, shall operate as a supersedeas thereof."

It is the claim of the appellant, Powers, that this section has application to the matter before us. With this we can not agree. The question we have in the case at bar is not the question of the issuance of an attachment and a levy upon property, but is a levy under execution, and with this distinction before us, we are unable to find any provision in the chapter dealing with executions making this rule applicable where the levy is made under execution. We are referred to the case of Woods v. Brown, 207 Iowa 944, as making this rule applicable to levies under execution. Attachments may be accomplished under our Code by two methods: One, by actual levy on the property by an officer; two, by garnishment. In the *Woods* case there was a garnishment under an execution, and we there recognize that this two-day limitation applied under the execution the same as under attachment. While the opinion itself does not, in terms, give the real foundation upon which the case is based, the facts are that it was decided as it was by reason of Section 11679, Code, 1927, in the chapter on "Executions," which reads as follows:

"Where parties have been garnished under it, the officer shall return to the next term thereafter a copy of the execution with all his doings thereon, so far as they relate to the garnishments, and the clerk shall docket an action thereon without fee, and thereafter the proceedings shall conform to proceedings in garnishment under attachments as nearly as may be."

A simple reading of this section shows that in so far as garnishment proceedings are concerned, after the garnishment has once been made under execution, the matter then passes to the district court, and the proceedings thereafter conform to the proceedings in garnishment under attachment. This, of course, will bring with it into the execution statute, the two-day limitation herein referred to when this is a garnishment, but it has no application to the case at bar for the reason that there is no garnishment involved here, simply an execution levy on personal property.

As heretofore indicated, in the cases of Mrs. Maloney v. Storjohann and Mrs. Maloney v. Hampe, the decrees were in plaintiff's favor, and at this point we might set out a portion of said decree (the decrees being alike in both cases):

"It is therefore ordered, adjudged and decreed that the said Park A. Findley, sheriff, and the said E. H. Hoyt, receiver, be and they are hereby permanently enjoined and restrained from further proceeding with the said execution for the sale of said stock, and the levy on said stock under said execution is hereby released and discharged and the said stock is now released from any lien or claim under or by virtue of the levy of said execution."

If this decree is to be taken at its face value, it is a self-executing order, and the instant it was entered of record, it released this stock from any lien under the execution, and if this were all there was to the matter, Powers' contention that he was the owner of this stock would be sustained as he became interested in the stock after the entries of those decrees. But later both of these decrees were reversed by this court, and the question is what effect these reversals had upon the rights of Powers.

Appellee insists that to still maintain the lien of the levy of these executions, appellants would have to put up a supersedeas bond, or procure a stay order from this court.

Section 12858, Code, 1927, reads as follows:

"No proceedings under a judgment or order, or any part thereof, shall be stayed by an appeal, unless the appellant executes a bond * * * to the effect that he will pay to the appellee all costs and damages that shall be adjudged against him on

the appeal; and will satisfy and perform the judgment or order appealed from in case it shall be affirmed, and any judgment or order which the Supreme Court may render, or order to be rendered by the inferior court, not exceeding in amount or value the original judgment or order, and all rents of or damages to property during the pendency of the appeal out of the possession of which the appellee is kept by reason of the appeal.''

A cursory reading of this section shows that it has no application to the situation before us. No order or money judgment was entered in the case and no question as to the rents or damages to the property is involved by reason of being kept out of possession thereof. It is apparent, therefore, that a supersedeas bond is not required and if put up, would accomplish nothing under the self-executing decree entered in this case. All the decree did was to declare the status of the property in litigation, and release the property levied upon under the execution from the lien thereof.

We are left to confront the question of what the law is generally under a situation of this kind. We do not have a situation where a decree simply determines priority of the liens —in which case both liens would continue to exist under the decree,—but here the decree discharged the property from the lien created by the levy of execution, thus freeing the property from such lien, and Powers became interested in said property during the time said property was thus free from said lien and before the decrees had been reversed after appeal to this court.

Section 12861, Code, 1927, reads: ''No appeal or stay shall vacate or affect such judgment or order.''

 It is apparent from this section that regardless of whether or not a supersedeas bond is furnished, the judgment or order is not affected or vacated thereby; hence, under the terms of these two statutes, in case a bond is put up, the judgment is not vacated or affected in any way by an appeal, except that process cannot issue thereunder.

We find some light on this question in the decisions of this court in the case of Watson v. Richardson, 110 Iowa 698, an action in which the plaintiff sought to have his status established as an heir of Mott Watson, and that he be permitted to share in the personal estate of the said Watson. It appears that prior to this (see Watson v. Richardson, 110 Iowa 673) the

Watson heirs sought to partition the real estate of Mott Watson, and the plaintiff in the first named case claimed a share in said real estate because he was the illegitimate son of Watson. The district court in the partition case held that he was not such heir. That decision was appealed from, and the same was pending at the time the latter Watson case was commenced. In that case defendants pleaded the decision of the district court in the former case as an adjudication and a bar. After setting out Section 4128, Code, 1897 (Sections 12858 and 12861, Code, 1927) we said:

"The judgment remains in full force for all purposes,— subject only to determination on appeal, until which time process thereon may be suspended. * * * Because of this statute we are precluded from adopting the rule which obtains in many states, holding that an appeal suspends the effect of a judgment, as an estoppel. * * * The very evident purpose of this statute is to preserve to the prevailing litigant the fruits of his judgment, even though an appeal has been taken. Independent of statutory enactment, this rule obtains in England, and has the approval of courts of high repute in this country. * * * [Citing cases.] The word 'judgment' is used in its generic sense in the chapter relating to procedure in the Supreme Court, and includes decrees in equitable actions. * * * But the distinction, if well founded between judgments from which appeals are triable de novo, and on errors assigned, is not made by the statute quoted. Besides, the right to render final judgment is not limited to equity causes. * * * Code, Section 4139. Section 4128 of the Code leaves no option, save to hold that a judgment or decree is *res adjudicata* until set aside, modified, or reversed. That this may involve hardship occasionally must be conceded, but under a contrary holding the defeated party might avoid the force of the decision for an indefinite period by merely taking an appeal."

In Jayne v. Drorbaugh, 63 Iowa 711, there had been litigation between the plaintiff and the defendant over the office of county supervisor in Johnson County. Plaintiff was defeated, appealed and put up a supersedeas bond, and the action was on said bond. Referring to the judgment of the district court we there said:

"No process was required in order to fully execute the judg-

ment, and therefore no process was stayed or superseded by the appeal. The judgment executed itself, and the plaintiff should have taken possession of the office, and he would have been entitled to the compensation attached thereto. * * * When it has been determined by the district or circuit court, in a proper proceeding, that a person is entitled to the possession of a civil office to which he claims to have been elected by the people, an appeal to this court should not have the effect to deprive such person of such office, pending the appeal, unless the statute in terms so provides."

In Lindsay v. Clayton District Court, 75 Iowa 509, a case in which a perpetual injunction had been granted against one Hagensick restraining him from manufacturing or selling intoxicating liquors, and ordering the abatement of the nuisance which the court found existed, Hagensick appealed and filed supersedeas bond. While the appeal was pending, contempt proceedings were instituted against him for violating the terms of this injunction. The district court held that the supersedeas bond prevented the punishment for contempt, and this was an original proceeding in certiorari to review the ruling of the district court judge. It was insisted that the appeal and supersedeas bond stayed the judgment, and prevented the court from making any inquiry as to whether contempt had or had not been committed. To support this contention reliance was placed upon Section 3186, Code, 1873 (Sections 12858 and 12861, Code, 1927), and we there said:

"It will be observed that the validity or effect of the judgment is in no manner affected by the appeal. It remains in full force, but process thereon is suspended until the appeal is determined. The judgment cannot be enforced by process, but a different rule prevails if the judgment is self-enforcing. * * * [Citing Jayne v. Drorbaugh, 63 Iowa 711.] The injunction remains in full force, and the appeal and *supersedeas* do not affirm or give the party enjoined the right to violate it."

In Hackett v. Freeman & Graves, 103 Iowa 296, it was sought to interrogate a witness as to his previous conviction of a felony. The case in which that conviction had occurred had been appealed and was pending appeal in the supreme court at the time. It was claimed that so long as the appeal was pend-

ing, such conviction could not be made the basis of a showing that the witness had been convicted of a felony. In relation thereto we said:

"Hence, until the judgment of the district court is modified or reversed, it continues in force, although the right to execute it may be suspended. It is true in some cases, and may be true generally, not only that the right to execute the judgment is suspended, but that no action to enforce a right based upon it can be maintained pending an appeal, where bail is put in. To sustain such an action it must appear that the judgment is final. The judgment is not otherwise affected, however, before it is reversed or modified by this court. Until that time the conviction stands, and may be shown as bearing on the credibility of the person convicted, when he testifies as a witness."

In Cole v. Edwards, 104 Iowa 373, the suit was on a supersedeas bond. In the discussion we said:

"An appeal or stay does not vacate or affect the judgment appealed from. Code, 1873, Section 3186. The decree perpetually enjoining Edwards from engaging in the practice of medicine at Woodbine and vicinity was not vacated or suspended by the appeal, or the filing of the bond."

It will be noticed that these cases all recognize and are in harmony with the section of the statute above set out, 12861, Code, 1927, to wit, that the judgment or decree is not vacated or affected by the appeal. The decrees having, therefore freed this property from the liens created by the levy of the execution —thus fixing the status of this property—were in full force and effect at the time Powers became interested in the property. There being nothing on the books of the Company that would be notice to him, and he not having any knowledge of the litigation, having furnished a full cash consideration therefor, he necessarily took the stock as an innocent purchaser for value, and would not be affected by a subsequent reversal of those cases by this court.

Appellee however insists that in the decrees to which we have above referred in the cases of Mrs. Maloney versus Storjohann and Hampe, the court went further than it had the

power to do in setting aside the liens created by the levy of the execution by the sheriff.

In the petitions filed in these cases, each prayed that the defendants be permanently enjoined from selling said stock under the execution and that the defendant therein "be made to release said property from said levy of execution". These petitions were met with a general denial and the court entered the decree with the provisions above set out, and provided that the levy on the stock under the execution "is hereby released and discharged and said stock is now released from any lien or claim under or by virtue of the levy of said execution."

The cases cited by the appellee are cases in which the relief granted in the decree exceeded that prayed for in the petition, and regardless of whether the decree was too broad, at the same time it was so decreed and said stock was ordered released and discharged from the lien of the execution. The cases cited by appellee have no application, therefore, to this situation..

Our conclusion therefore is that the plaintiff in this case has failed to establish the facts which would warrant the granting of the prayer of his petition.—Reversed.

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.